UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Floyd Collins, Jr.,

    Debtor.

Case No.: 14-59244
Chapter 7
Hon. Mark A. Randon

_____/

Credit Acceptance Corporation,

    Plaintiff,

v.

Adversary Proceeding
Case No.: 15-04302

Floyd Collins, Jr.,

    Defendant.

_____/

## OPINION AND ORDER: (1) GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; (2) DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND (3) SCHEDULING EVIDENTIARY HEARING

**I.    INTRODUCTION**

When Floyd Collins, Jr.'s ("Debtor") recently purchased car broke down hundreds of miles from home, he scrapped it for $480.00 at an under-the-table junk yard to get bus fare home. The problem: Credit Acceptance Corporation ("CAC") had a security interest in the car. CAC never authorized Debtor's disposition of its collateral. And a year later–having failed to make a single monthly car payment–Debtor filed Chapter 7 bankruptcy.

In this adversary proceeding, CAC seeks: (1) a determination that the debt is nondischargeable under section 523(a); and (2) to deny Debtor a general discharge under section 727(a). Cross motions for summary judgment are pending.

Because Debtor willfully and maliciously injured CAC's collateral, CAC's motion is **GRANTED**. Debtor's motion is **DENIED WITHOUT PREJUDICE** pending CAC's determination of whether it intends to pursue the remaining counts.

## II. BACKGROUND

On December 17, 2013, Debtor purchased a 2006 Cadillac STS for $12,995.00. He also bought an optional extended warranty service contract for $1,930.00. The warranty covered the repair of "certain major mechanical breakdowns of the [Cadillac] and related expenses." Debtor's purchase was financed through CAC. After taxes, interest and finance charges, the total sale price was $27,238.92. Debtor made a down payment of $1,500.00 and agreed to make 57 additional monthly payments of $451.56 beginning January 17, 2014.

CAC obtained a security interest in the Cadillac. The sales contract Debtor signed states: "You are giving a security interest in the goods or Vehicle being purchased." There is also a provision entitled "Security Interest," which reads:

> You give Us a security Interest in: 1). The Vehicle and all parts or goods installed In it; 2). All money or goods received (proceeds) for the Vehicle; 3). All insurance, maintenance, service or other contracts We finance for You; and 4). All proceeds from insurance, maintenance, service or other contracts We finance for You (this includes any refunds of premiums). This secures payment of all You owe on this Contract and in any transfer, renewal, extension or assignment of this Contract[.] It also secures Your

other agreements in this Contract. You agree to have the certificate of title show our security interest (lien) in the Vehicle.

Debtor also made certain promises to CAC in the sales contact, including:[1] (1) not to "sell, rent, lease or otherwise transfer any interest in the Vehicle or this Contract without our written permission"; (2) not to "expose the Vehicle to misuse or confiscation"; (3) not to "use the Vehicle unlawfully or abandon it"; (4) to "preserve and protect the Vehicle and keep it in good condition and repair"; and (5) under the "Ownership and Risk of Loss" provision, "to pay all [he] owe[d] under this Contract even if the Vehicle is damaged, destroyed or missing."

Approximately one month after purchasing the Cadillac, Debtor says he drove it from Mississippi to Florida where the engine "started knocking and . . . locked up." Instead of contacting CAC, Debtor took the Cadillac to his friend's uncle–not a mechanic–who informed him that the "engine was no good." Relying only on this advice–and without regard to the warranty covering major mechanical repairs–Debtor took the Cadillac to a junk yard. The junk yard "scrapped" the Cadillac without verifying whether Debtor had clear title, and paid him $480.00.[2] Debtor knew he did not have clear title because he had not made a single monthly payment on the loan. He used the money for bus fare back to Mississippi.[3]

---

[1]The sales contract contained an assignment from Joe Hill's Autorama to CAC.

[2]The certificate of title reflects CAC is the lien holder.

[3]Debtor does not have any documentation to substantiate his contention. But for purposes of the motions of summary judgment, CAC assumes that Debtor's story is true.

-3-

### III. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment must be granted "if the movant shows that there are no genuine issues as to any material fact in dispute and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 340 (6th Cir. 2011). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Pittman v. Cuyahoga County Dep't of Children Services*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must draw all justifiable inferences in favor of the party opposing the motion. *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011). However, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). A mere scintilla of evidence is insufficient; there must be evidence on which a jury could reasonably find for the non-movant. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

### IV. ANALYSIS

    A.    *11 U.S.C. § 523(a)(2)(A)*

11 U.S.C. § 523(a)(2)(A) excepts from discharge "debt[s] for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by [] false pretenses, a false representation, or actual fraud[.]" To prevail, CAC must prove the following elements:

> (1) the debtor obtained [property] through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Services (In re Rembert)*, 141 F.3d 277, 280-81 (footnote omitted).

Debtor agreed to make monthly payments to CAC. He reneged. CAC argues that when the sales contract was signed, Debtor knew he was not going to make the monthly payments; Debtor says he had every intention of doing so, but decided not to *after* the engine died and the car was scrapped.

The Court finds there is a genuine issue of material fact regarding whether Debtor intended to make the payments at the time the sales contract was signed.

### B.      11 U.S.C. § 523(a)(6)

11 U.S.C. § 523(a)(6) provides that debts for "willful and malicious injury by the debtor" are nondischargeable. CAC must establish, by a preponderance of the evidence, that Debtor's transfer of the Cadillac for scrapping was both "willful" and "malicious." *In re Krupp*, No. 13-12516, 2013 WL 5745274, at *6 (E.D. Mich. Oct. 23, 2013). "The judgment must be for an injury that is both willful and malicious. The absence of one

-5-

15-04302-mar    Doc 41    Filed 01/29/16    Entered 01/29/16 17:28:25    Page 5 of 8

creates a dischargeable debt." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999).

### 1. "Willful" Under 11 U.S.C. § 523(a)(6)

A "willful" injury is one that rises to the level of an intentional tort." *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998) ("the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself'") (quoting Restatement (Second) of Torts 8A, Comment *a*, p. 15 (1964) (emphasis added)).

Although Debtor owned the Cadillac when he transferred possession of it to the junk yard, it remained subject to CAC's security interest. He had no authority to have CAC's collateral scrapped without its permission–until the loan was paid in full. *See Vulcan Coals, Inc. v. Howard*, 946 F.2d 1226, 1229 (6th Cir. 1991) ("the intentional tort of conversion . . . meets the requirements of § 523(a)(6) for non-dischargeability when it is alleged (or proven) that the debtor intentionally transferred property to one who is not entitled to it without the authorization or approval of the one entitled to the property").

The Court finds as a matter of law that the deliberate transfer of the Cadillac to the junk yard without CAC's knowledge was willful, as defined in section 523(a)(6).

### 2. "Malicious" Under 11 U.S.C. § 523(a)(6)

In our circuit, "malicious" means "in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm."

-6-

*Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986). The Court may consider direct and circumstantial evidence in determining whether Debtor's transfer of CAC's collateral to be scrapped was malicious. *See Iberia v. Jeffries (In re Jeffries)*, 378 B.R. 248, 256 (W.D. Mo. 2007) ("This Court may consider both direct evidence of Debtor's subjective state of mind and evidence of the surrounding objective circumstances, and then may make appropriate inferences as to whether Debtor harbored the proscribed intent.").

Debtor argues that his youth, lack of sophistication, and failure to fully understand the meaning of a security interest equates to a finding that he did not act maliciously. The surrounding circumstances prove otherwise.

Assuming Debtor was not sufficiently sophisticated to understand the security interest, his testimony at the 341 meeting of creditors shows he was aware that he lacked clear title to the Cadillac:

> THE TRUSTEE: Did you sign the title over to them [the junk yard]?
>
> THE WITNESS: I didn't have no title. The car, I still been paying on it.[4]

At the time of the transfer, Debtor still owed over $27,000.00; he had not made a single monthly payment. Yet he took the car to an illegally operating junk yard, failed to present any title work, and received only $480.00 to scrap it. Debtor did not get a receipt evidencing the transaction. At no time did he make contact with CAC.

---

[4]There was an acknowledgment–in bold print–directly above Debtor's signature on the sales contract that says: "You agree to the terms of this Contract and acknowledge that You have received a copy of this Contract with all blanks filled in and that You have read it and understand it."

-7-

The Court finds that this conduct was malicious, as defined in section 523(a)(6), and CAC must prevail as a matter of law.

## V. CONCLUSION

Because Debtor willfully and maliciously injured CAC's collateral, CAC's motion is **GRANTED**. The debt owed to CAC is nondischargeable under section 523(a)(6). Unless the parties stipulate to the amount that is nondischargeable, the Court will hold an evidentiary hearing on *February 22, 2016 at 2:00 p.m*.[5]

Debtor's motion is **DENIED WITHOUT PREJUDICE**. CAC must inform the Court at that time set for the evidentiary hearing whether it intends to pursue the section 523(a)(2)(A) and section 727(a) counts.[6]

**IT IS ORDERED**.

**Signed on January 29, 2016**

/s/ Mark A. Randon
**Mark A. Randon**
 **United States Bankruptcy Judge**

---

[5] CAC stated at the hearing that it believes the nondischargeable amount is limited to the value of the car on the date of transfer.

[6] The Court holds the determination of the section 727(a) counts in abeyance. CAC generally does not pursue those counts if successful on a section 523(a) argument.

-8-